PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* BENITO MESTEY, Defendant and Appellant.

No. 3723. Argued December 20, 1929.—Decided December 23, 1929.

R. *Martínez Nadal* and E. *Santana*, for appellant.  R. A. *Gómez*, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The district *fiscal* filed an information against Dolores Maysonet and Benito Mestey charging that on December 31, 1926, they wilfully, maliciously, and with intent to defraud the insurance company, set fire to house No. 61, on Colombia street, in Bayamón, which belonged to the said Benito Mestey, who had insured the same.

The defendants pleaded not guilty and moved for a jury trial. When the case was called for trial, the court, on mo-

tion of the prosecuting attorney, dismissed the information as to Maysonet and directed that the cause be discontinued as to him. After the evidence was heard the jury found Mestey guilty, and the court sentenced him to three years in the penitentiary at hard labor.

Mestey took the present appeal and has filed a brief, which fails to comply with the rules regarding the assignment and argument of errors. At the hearing of the appeal the defendant was represented by counsel, who based appellant's defense on the supposed flimsy, improbable and questionable nature of the evidence introduced at the trial and, consequently, urged that the evidence was insufficient to support the verdict of guilty and the judgment of conviction herein.

We have examined the evidence and in our opinion it is sufficient.

The fact of the fire itself has not been questioned. Not only was the house mentioned in the information destroyed, but the fire, which started in it, spread out and destroyed some eighty-four houses in the city of Bayamón, including other houses of the defendant which were also insured.

In our opinion the guilt of the accused has been proved beyond a reasonable doubt. Maysonet directly incriminates him. The house was not occupied. According to Maysonet, he went with its owner, the accused, to wash the floors and found inside "two sacks soaked with kerosene and a lighted candle on the floor," and he also saw the accused "throwing buckets of kerosene inside." They thus left the house, which the defendant locked, and shortly thereafter the fire started.

It is true that the statement of Maysonet as to his asking the defendant, when he saw the sacks and the candle: "Benito, what is that?", to which Benito answered: "Shut up or I will kill you or make you an accomplice," apparently lacks a satisfactory explanation, as it seems improbable that the defendant would take a stranger to his house under the circumstances. But what took place may be perfectly under-

stood in view of Maysonet's acting in criminal alliance with Mestey, especially when the whole evidence is known.

Accepting the above explanation with all its implications, that is, recognizing the witness as a real accomplice, it is found that his testimony is corroborated, as required by law, and hence could be considered.

Witness Alfonso Castro testified that about two months prior to the fire the accused offered him two hundred dollars to set fire to his house, to which the witness answered that he should look elsewhere; and he further testified that after the fire the defendant told him that Maysonet "had blundered because that was a thing to have done at night, and he did it in the daytime."

Great stress is laid upon the fact that Castro has been convicted several times. That is true; but to what other kind of person could the defendant make the proposal which he made to the witness? None of those convictions was for perjury.

The testimony of Maysonet and Castro shows the assurance with which the defendant spoke of the occurrence—of the difficulty, almost the impossibility, of proving the commission of arson. In fact, had not Maysonet's conscience half moved him to speak, urged perhaps by the magnitude of the crime, in consequence of which so many poor families were left without a home—the evidence shows that Maysonet went to Mestey's home and told him: "That looks like a cemetery"—and had he not felt sure of his discharge, the conviction of Mestey would have been quite a hard task for the government.

Why did Castro speak? His testimony is suspicious, as is always the case when the testimony of persons of his kind is involved; but since no evil motive has been shown, his testimony must stand. Why not think that his conscience also might have been moved by the magnitude of the disaster? Does it not seem logical that his own previous connection with the event should have led him into making close

inquiries, and then to establish contact with Maysonet and work, as he did, to procure his release on bail and even tell him, as he says he told him once: "As Benito wants to get you in trouble, you get him in yourself."

But Castro's is not the only testimony in the case.

Witness Inés Rivera gives very important information. She saw Maysonet and the defendant leaving the burned house, as Maysonet testified. She was living back of the house and "smelt gasoline," went in search of a box and, when approaching the house of Benito (the accused), "the smell was stronger, and at about seven o'clock the woman living opposite said: 'Mercedes, what sort of flame is that?'; I looked and we noticed that the fire came from inside the house, the fire was coming out thus and immediately there was an explosion, like it burst and came out from the sides."

Several other witnesses also saw Maysonet and the defendant in the house, which had been vacant for two months, and explain the fire, as Inés Rivera did, as coming from the interior of the locked house.

If we add to this that three competent witnesses testified that they knew the house, which was insured for eight hundred dollars and was only worth between two hundred and fifty and three hundred dollars; that other houses, belonging also to the defendant and insured for more than they were really worth, had been destroyed; and the statements from several witnesses, one of whom was a policeman, in connection with the attitude of the defendant, who tried to prevent the wrecking of his house for the purpose of isolating the fire, it must be concluded that there exists ample independent evidence which connects the accused with the crime and fully corroborates his participation in the same, as testified by Maysonet.

The evidence for the defense, which includes the testimony of the defendant himself, tends to contradict that for the prosecution. The jury resolved the conflict. There is no showing of passion, prejudice or bias; and no manifest error

appears. On the contrary, the evidence as a whole shows, as already stated, the guilt of the defendant beyond a reasonable doubt.

The judgment appealed from must be affirmed.